# Rogers's Estate.

'218   431
d40SC  43

*Will—Power—Wrongful exercise of power.*

The power to dispose by will of a certain sum of money out of a larger fund, to one class, and the balance of the fund to another class, with an alternative disposition by the donor of the power upon failure to make such distribution, is not validly executed by appointing a larger sum to the one class, and the balance of the fund to members of the second class not mentioned in the alternative disposition made by the donor.

MITCHELL, C. J., FELL and STEWART, JJ., dissent.

Argued March 19, 1907.   Reargued May 20, 1907.   Appeal, No. 337, Jan. T., 1906, by Sarah Jane Pierce, from judgment of the Superior Court, Oct. T., 1905, No. 179, affirming decree of O. C. Chester Co., sustaining exceptions to auditor's report in Estate of Sarah Jane Rogers, deceased.   Before MITCH-

ELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEW-
ART, JJ., on reargument.  Affirmed.

Appeal from Superior Court.

The facts appear in the opinions of the Supreme Court.
See also Rogers's Estate, 31 Pa. Superior Ct. 620.

*Error assigned* was the decree of the Superior Court.

*John G. Johnson*, with him *J. Frank E. Hause*, for appel-
lant.—There is a long line of cases in England and in Penn-
sylvania, establishing that where a donee is given power to
appoint a fee simple, and exercises it only partially as by
appointing a life estate, the exercise pro tanto is good : Wilk-
inson v. Duncan, 30 Beavan, 111 ; Asay v. Hoover, 5 Pa. 21 ;
Lawrence's Estate, 136 Pa. 354 ; Zouch v. Woolston, 2 Burrows,
1136 ; Laurie v. Clutton, 15 Beavan, 65 ; Eales v. Drake, L. R.
1 Ch. Div. 217 ; Horwitz v. Norris, 49 Pa. 213.

*Alex. Simpson, Jr.*, with him *Isabel Darlington, Thomas S.
Butler* and *Thomas W. Baldwin*, for appellee.—The execution
of the power by the donee is defective and cannot stand un-
aided : Evans's Est., 10 Pa. Dist. Rep. 261 ; Safe Deposit &
Trust Co. v. Friend, 201 Pa. 429.

Equity will not aid the defective execution of the power,
because there is no meritorious consideration in the appointees
of the donee.

In Pennsylvania, a power may not be exercised in part.
The power must be strictly executed.  If valid in part, or only
partially executed, it fails entirely : Porter v. Turner, 3 S. &
R. 108 ; Horwitz v. Norris, 49 Pa. 213 ; Wickersham v. Sav-
age, 58 Pa. 365 ; Pepper's App., 120 Pa. 235 ; Smith's Est., 4
W. N. C. 265 ; Neilson's Est., 17 W. N. C. 326 ; Evans's Est.,
10 Pa. Dist. Rep. 261.

The donee failed to regard a material feature of the power,
and the defect cannot be aided : Woods's Est., 1 Pa. 368.

OPINION BY MR. JUSTICE MESTREZAT, May 27, 1907 :

The very elaborate discussion of the questions raised on this
record by the orphans' court and Superior Court so fully vin-

dicates the conclusion of those courts that nothing more can profitably be said in support of the decree entered by the orphans' court. From the authorities cited and reviewed in the opinions filed by those courts, it is clear that the power of appointment conferred on Evans Rogers by the will of his wife was defectively executed, and that the alternative provision disposing of the residue of her estate becomes an effective disposition of the fund.

The donee of a power is simply a trustee for the donor to carry into effect the authority conferred by the power. In exercising the power, he must observe strictly its provisions and limitations. The estate appointed is that of the donor and not of the donee, and in making the appointment the intention of the donor and not that of the donee must prevail. In case of a restricted power, the donee's discretion in exercising the power is defined by the will, and the limit there placed upon it must be observed.

Recurring to the case in hand, it is apparent that Rogers exceeded the power given him in the will of his wife. The authority conferred upon him by Mrs. Rogers's will to dispose of the residue of her property is as follows: "Four thousand dollars to my mother's family and the balance to my father's family in such manner as he may think proper." The power thus given the donee is clearly expressed and confers authority upon him to appoint $4,000 to the mother's family and "the balance" to the father's family. Such was the distribution which Mrs. Rogers authorized her husband to make of the residue of her estate. In violation of the power given him and in an attempt to dispose of the estate as if it were his own, he gave the mother's family $4,500, thereby defeating the intention of the donor not only by giving the mother's family more of the donor's estate than she had authorized to be given it, but also depriving the father's family of part of the estate which the donee was clearly directed to appoint to it. It is manifest, therefore, that the appointment was a direct violation of the power and hence cannot be sustained.

But will equity come to the relief of the appointees and cure the defective appointment? It cannot do so under the circumstances of this case unless at the instance of a mere volunteer it executes the power of appointment instead of the

donee without any knowledge of his intention as to the manner of carrying it into effect. The contest here is between volunteers and under such conditions, as the authorities clearly show, a court of equity will not interfere. But suppose the appellant is in a position to invoke the assistance of equity, is the defect such that it may be cured? The donee gave $4,500 to seven of the mother's family. This was $500 in excess of his power of appointment. If this appointment is good, it is manifest that "the balance" of the residue of the testatrix's estate after deducting $4,000 cannot be given the father's family. It is therefore absolutely necessary that the appointment of the $4,500 to the seven appointees be corrected by reducing it $500. The auditor attempted to do this by making a pro rata abatement of the amount given each appointee so as to make the total appointment conform to the power. But this was clearly beyond the authority of the auditor. The proportion of the $4,000 which the respective members of the mother's family should receive was exclusively for the donee, and as there was nothing in the appointment disclosing his intention as to the proportion or manner in which he would have distributed the $4,000, the auditor or the court could not determine it. It was likewise for the donee to determine the appointees and their respective shares in "the balance" which was to be appointed to the father's family. The auditor awarded the $500 appointed to the mother's family to the appellant, a member of the father's family, as the residuary legatee under the donee's will. Here again, there is nothing whatever to indicate what the donee would have done had he been called upon to appoint the $500 to the father's family. As well said by the learned orphans' court: "If he had discovered his error after executing the will, he might have appointed the $500 to a new legatee within the class, he might have simply applied it to a proportionate increase of the existing bequests within the class, he might have arranged a new and radically different disposition of the fund. As to this we could only conjecture and guess." It is therefore apparent, we think, that the attempted execution of the power was so defective as to be incurably bad. The power conferred authority on the donee to appoint a certain and specific sum to two distinct classes of persons, and in his attempt to exercise

the power he ignored and disregarded a material provision of his authority by appointing the fund or estate otherwise than directed by the donor, and in such manner as a court of equity is unable to give relief to the appointees.

While the sum given the appellant by the donee was the residue of the estate, it was limited in amount. The estate consisted of a certain fund, the amount of which is shown by the account of the executors of Evans Rogers. Four thousand dollars were directed to be given the mother's family. "The balance" which was to be appointed to the father's family was necessarily a certain and fixed sum. Whether, therefore, the amount appointed to the appellant is called the residue, or the exact sum was named by the donee, is wholly immaterial, as in either instance she was given a fixed sum under the donee's appointment which was not intended to and did not include the $500 distributed among the mother's family. The amount appointed to the father's family is just $500 less than the sum directed by the donor to be distributed among the different members of the family, and, if equity has authority to correct the appointment, there is no standard established by the appointment for ascertaining the intention of the donee as to which of the distributees or in what proportion among them the excess should be appointed. There is clearly no more authority for the court to aid the appointment by directing the payment of the $500 or any portion of it to the appellant than to all or any of the other members of the father's family.

The judgment of the Superior Court is affirmed.


MITCHELL, C. J., dissenting:

If Mrs. Rogers had bequeathed to members of her mother's family by name, stocks or money amounting to $4,500, and it turned out that in fact she had only $4,000, the court would have found no difficulty in making a pro rata distribution of what she actually had, and the bequests would have been held good pro tanto. But instead of naming the legatees herself, Mrs. Rogers delegated that power to her husband. It was her right to do so. It is conceded that he exercised the power in good faith with intent to execute the donor's will, but by a slip of memory, or a clerical miscalculation of amounts, he ap-

pointed $4,500 instead of the $4,000 which he was authorized to do. Why should such an error, which would not have invalidated the gift by testatrix herself, have that effect on the appointment by the donee of the power, standing in loco testatoris? That the donee of a power of appointment is carrying out the donor's will and not his own, and, therefore, must follow the delegation of authority strictly is not disputed, but where, as here, there is an unquestioned intent to do so and no substantial difficulty in reaching that result, the construction should lean to the support of the exercise rather than to its defeat. It is said that the appointees are mere volunteers and have no claims upon the favor of a court of equity. But it is not a question of favoring volunteers, but of carrying out the lawful, clearly expressed and undoubted will of the testatrix. That is what the court, whether of equity or of law, should endeavor to do, not to be astute to find means of not doing. As already said, the only flaw in the execution of the power is a comparatively small error in the amount, which could be easily cured by a pro rata reduction, as it unquestionably would have been if the error had been made by the testatrix herself. The appointments were made in the manner prescribed, i. e., by will, and every appointee named was in the class authorized. By this decision a lawful intent of the testatrix clearly expressed is to be defeated by a trivial error in the donee's execution of the power, although it does not contravene the testatrix's intent in any way that is not easily susceptible of plain remedy that would be applied without question to the act of testatrix herself. The learned auditor in his first report said, "the auditor was not furnished by counsel with any case that supports his contention," and it is still to be said after three courts have made the effort that no one nor all of them have yet found and furnished such a case. It is the logic of technicality run mad.

So far I have referred only to the defect in the execution of the power with reference to the testatrix's mother's family, which was the basis of the decision of the court below. But bad as it is in that aspect it is far worse as applied to the testatrix's father's family to which the appellant belongs. If the appointment to the mother's family is set aside as bad then all the share that was to go to the father's family is still in-

tact and is well appointed, and the effect is the same as if the donee by refusing or neglecting to make any appointment at all to the mother's family had left that part of his power unexecuted. Yet because instead of making no appointment on that branch of the power, he did what was equivalent, made one that was not valid, the entirely valid exercise of the other branch of the power must go down with it. The testatrix intended that the bulk of her estate (which by the auditor's report amounted to about $28,000) should go to her father's family, for she authorized her husband " to dispose of the same by his will, as follows: Four thousand dollars to my mother's family, and the balance to my father's family." Appellant is one of the father's family and the husband appointed to her the sum of $14,000, and the residue of his wife's estate after legacies to other members of the family. If the appointment to the mother's family had been mathematically exact, i. e., $4,000, appellant under the execution of the power would have taken without question $14,000 and a residue of approximately $764. Yet on account of the error of appointing to the mother's family $500 too much it is held that the fund for the father's family is $500 too little and, therefore, is not appointed at all. In plain English, it is held that because the donee of the power gave the appellant $500 less residue than he should have done by exact calculation in the execution of the power, therefore, she shall get nothing. This is such a manifest travesty of justice and common sense that I cannot be persuaded it is law.

Justices FELL and STEWART join in this dissent.