## McKallip's Estate.

Argued October 9, 1936. Before SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

440

*John E. Winner,* with him *Floyd V. Winner,* for appellants.

*Hermann L. Grote,* with him *Frederick C. Grote,* for appellees.

OPINION BY MR. JUSTICE DREW, November 23, 1936:

The will here concerned was executed in 1919 and was supplemented by a codicil in 1922. Margaret J. McKallip, the testatrix, died on December 5, 1925.

The will gave the residue of the estate, which was much the larger part, to Louis J. Schoenberger, Hermann L. Grote and Barbara Rhodes in trust, to invest the same and to pay from the net income thereof two hundred dollars each month to Martha J. Crow, testatrix's sister, for life. The balance of the income and all of it on the death of Martha J. Crow, if the trustees thought such amount necessary, was to go for the education of testatrix's three nieces, and later the whole income was to be paid to the nieces in equal shares during their lives, and on the death of one to the survivors, and on the death of another to the last survivor. The remainder interest was vested in the appellants. The trustees were also made executors.

Later, by a codicil, testatrix provided:

"I leave Ida Crum Campbell authority to change my will according to personal dictation—Boat sailing

"MARGARET J. McKALLIP

"Nov. 15, 1922"

After writing this, while on a boat about to sail for South America, finding she had a few minutes left, she added the following:

"Boat not leaving—for 25 min. 4 Oclock

"I want Ida C. Campbell to act as Executrix with (Mellens) Pittsburgh Trust Co.—and Herman C. Grote —and any changes dictated in Will by Ida C. Campbell to be carried out—so long as my ~~personal~~ sister Martha ~~J.~~ Crow lives—she to receive Income so long as she lives —altho any property can be sold or my personal effects sold or distributed among my nieces as Ida C. Campbell and my sister Mattie arrange and agree to—After my sisters death the balance of the Will can be executed—. . . ."

These testaments were before us on the appeal of Barbara Rhodes reported at 291 Pa. 304. We there held that the codicil recalled her appointment as co-trustee and executrix.

Since then Ida Crum Campbell has by a duly executed document purported to carry out the authority to make changes in the will given her by the codicil. She recited that the estate was seriously depleted shortly before the death of testatrix by the embezzlement of a broker. As a result the income was inadequate to maintain the nieces in school, the "chief purpose and desire" of testatrix. To this end she altered the trust by segregating from corpus a separate fund in the amount of the present worth of the appellants' remainders, to be accumulated for appellants during the life of the longest-lived of the three nieces. This is now to be their only interest in the estate. The rest of the corpus is to remain invested for the nieces; the principal of this part is also to be available to meet their needs if in the judgment and discretion of the trustees it is thought advisable. Because she predeceased the testatrix, Martha J. Crow has no place in this resettlement.

The auditing judge confirmed an account making distribution on the terms of Ida Crum Campbell's directions. The Orphans' Court in banc affirmed his action. Those who were to take in remainder by the provisions of the original will have appealed.

Two problems confront us at the threshold. It is urged the case is moot. The argument is that the equitable apportionment between life beneficiaries and remaindermen of the original trust leaves the latter no substantial ground for complaint. Life expectancies are a basis for judicial action in many cases where there is no better. But here, being compelled to exchange certainty for speculation, appellants may challenge the alleged power of appointment.

Appellee also contends that we have decided the issues here involved in *McKallip's Estate,* 291 Pa. 304. The alleged power had not yet been exercised; the issue there involved did not concern it; nor did the appellant there in any sense represent the interests now appealing. For these reasons the doctrine of res judicata does not apply: *Pittsburgh & Lake Erie R. R. Co. v. McKees Rocks Borough,* 287 Pa. 311, 317; see *McGunnegle v. Pittsburgh & Lake Erie R. R. Co.,* 269 Pa. 404, 409; VON MOSCHZISKER, Res Judicata, 38 Yale L. J. 299, 303, 311.

Questions upon the validity and scope of "the authority to change my will" are presented by appellants. We think the court below has answered them correctly.

The codicil clearly represents in lay fashion an intention to give a collateral power of appointment—"an authority to deal with an estate, no interest in which is vested in the donee of the power" *(Dickinson v. Teasdale,* 1 DeGex. J. & S. 52, 60). When the intention to create a power is plain it should be given effect; no technical form of words is necessary: *Graeff v. DeTurk,* 44 Pa. 527.

Such a collateral power, broad as it is, does not violate our Wills Act which prescribes exclusive methods for the revocation of wills. This has been held in other jurisdictions with similar statutory limitations: *Dudley v. Weinhart,* 93 Ky. 401; Cf. *Goods of John Smith,* L. R. 1 P. & D. 717. Apparently Illinois stands alone in an opposite view: *Zierau v. Zierau,* 347 Ill. 82, with critical comment in 27 Ill. L. Rev. 297. Nor is the gift of

such an authority a delegation of the privilege, personal to each testator, to dispose of property on death. See *Meade King v. Warren,* 32 Beavan 111, 116.

Both conclusions just reached follow from the traditional and technical analysis of powers. Originally enforced in equity only, the appointed interests operated as shifting uses and executory devises. The exercise was viewed merely as the event upon which the use went over: see *Sugden, Powers* (3d Am. ed.) xii. Before that event the estates that might be vested by appointment were classed as future or contingent uses *created by testator or settlor:* see *Sugden,* supra, 82. After the Statute of Uses the use thus shifted was at once invested with legal title where the statute applied. The same learning applies to collateral powers allowing the broadest discretion to the donee: see *Sugden,* supra, 108, passim. Thus it is impossible to take the view that the Wills Act is planned to defeat the intention to create a power of appointment. Neither can we say so merely because the result intended is ineptly expressed as an authority to change the will.

The power here created endures by its terms for the life of the donee. The codicil bears on its face indication that at first testatrix thought she had only time enough to grant the power. This she did and signed. With twenty-five minutes more she made other changes from her earlier will, but it is highly improbable that she intended to restrict the broad power just created. The style of the writing is telegraphic and without punctuation other than dashes between phrases and sentences. Capitals are placed on key nouns and apparently at the beginning of sentences. So deciphered the provision for "sister Martha" is a separate sentence not limiting the power of appointment. Mr. Justice SADLER also used this arrangement in 291 Pa. 304, 306. A power of sale and of distribution of testatrix's effects is later granted to Martha Crow and Ida Crum Campbell jointly, but it in no way touches the power of appointment.

From what has been said it is clear that the donee's exercise of her power was timely. That it was preceded by award of distribution to the trustees for the purposes in the will can make no difference. It was in the nature of the power that those purposes might be later changed. A void interregnum was not contemplated.

Decree affirmed at appellants' cost.